IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES GARRETT,

      Plaintiff,      Case No. 3:17-cv-497

v.

CSX TRANSPORTATION, INC.      Judge Crenshaw/Magistrate Judge Brown

      Defendant.      JURY DEMAND

_____

**PLAINTIFF'S MOTION *IN LIMINE***

   Plaintiff James Garrett moves *in limine* to exclude the following evidence from trial: (1) evidence of VA benefits Mr. Garrett was qualified for because the VA determined his disability was service related, including Mr. Garrett's application; (2) evidence that Mr. Garrett applied for short term disability; (3) Letter from the EEOC regarding Plaintiff's charge of discrimination and (4) testimony by Dr. Heligman that purports to be expert in nature.

   **I. Mr. Garrett's VA Benefits Award and Application Should Be Excluded From Evidence**

   Plaintiff is a retired Veteran who served twenty years in the U.S. Army. As a result of his extended service, during both Peacetime and the Gulf War era, including overseas deployments, Mr. Garrett was eligible to apply for service connected compensation through the Department of Veterans Affairs ("VA"). Mr. Garrett had been deemed to have a 100% service connected disability for his CHF and other conditions since at least 2011; however, he had not sought compensation related to his CHF. After CSX placed Mr. Garrett out of service in March 2016 and Mr. Garrett was without income, Mr. Garrett applied for VA benefits for service connected compensation in February 2017. In doing so, VA officials and physicians reviewed his records and

1

issued a determination on June 19, 2017, that Mr. Garrett was eligible to receive monthly compensation because his Congestive Heart Failure ("CHF") and AICD implant were 100% related to his military service. (Garrett 217- 234, **Ex. 1**). Because the VA rated Mr. Garrett's CHF as 100% service connected, he was entitled to additional compensation based on what the VA referred to as "housebound." (Ex. 1 p. 228).

### a. *Award of VA Benefits Are Barred by the Collateral Source Rule*

Receipt of income from collateral sources may not be used to mitigate damages. *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 433-36 (6th Cir. 1999) ("[a]pplying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfall, and also promotes the deterrence functions of discrimination statutes"); *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994) ("[t]he collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to a plaintiff by the amount of recovery the plaintiff receives from sources that are collateral to the tortfeasor"); *see also Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160 (6th Cir. 1996) (holding that the plaintiff's unemployment benefits and workers' compensation benefits were collateral source benefits, and thus should not have been deducted from the jury's award of back pay for racial discrimination). Evidence of such payments, therefore, is not admissible. *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 627 (6th Cir. 1983) (analyzing the "make whole" concept of a back pay award in a Title VII case in holding that unemployment benefits should not be deducted from back pay awards). *See also Hamlin v. Charter Township of Flint,* 165 F.3d 426,433-436 (6th Cir. 1999); *Thurman v. Yellow Freight Systems. Inc.,* 90 F.3d 1160, 1170-71 (6th Cir.1996).

Defendant conducted discovery on Mr. Garrett's service connected benefits. Mr. Garrett is

2

eligible for these benefits solely as a result of the VA's determination that his CHF and ICD implant is 100% related to his service. Mr. Garrett's receipt of these benefits falls under the collateral source doctrine. Thus, Plaintiff's eligibility for or receipt of VA benefits for a service related disability, or amount thereof, at any time, has no bearing on this lawsuit and reference to same should be barred by Federal Rule of Evidence 402. Even if the same could be considered relevant, the danger of unfair prejudice and/or confusion of the issues substantially outweighs any probative value of the evidence. Fed.R.Evid. 403.

Accordingly, Plaintiff requests the Court prohibit introduction of evidence concerning the award of and amount of VA benefits.

### b. *The Physician's Notes Related to Mr. Garrett's VA Benefits Application are Hearsay and Irrelevant*

CSX did not obtain Mr. Garrett's VA records until after this litigation was initiated, thus, it did not rely on them as a business record, as such, they are considered hearsay. *Coffman v. Robert J. Young Co.*, 871 F. Supp. 2d 703, 716 (M.D. Tenn 2012) (J. Haynes) (unauthenticated medical records not relied on in making discriminatory decision are hearsay). F.R.E. 801, 802, 901. *See Norton v. Coyler*, 828 F.2d 384, 386-387 (6th Cir. 1987) (medical records must be properly authenticated and a proper foundation laid to satisfy the business record exception to the rule against hearsay).

### c. *The VA Records and Determination Must Be Excluded Because They Are Confusing to the Issues in This Case*

To the extent CSX seeks to argue that Mr. Garrett is too disabled to work due to his service related disability rating, or that he should not have been awarded that benefit, any such evidence or argument of the same should be excluded under Rule of Evidence 403 because it creates

3

confusion of issues. The VA has very different standards for determining what it considers a compensable service related disability from the definition of a disability under the ADAAA.[1] Likewise, to the extent Defendant may seek to allude that Mr. Garrett was *not* entitled to those benefits, in turn alluding that he provided incorrect information to the VA, such an approach would also be very prejudicial. Rule 403 of the Federal Rules of Evidence permits a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Due to potential confusion of the issues misleading the jury and danger of unfair prejudice, Mr. Garrett's VA disability rating, application, records and award must be excluded as confusing and prejudicial.

## II. Short Term Disability Denial and Physician's Notes in Support of Should Be Excluded From Evidence

Defendant elicited information during Plaintiff's deposition about a letter Mr. Garrett's physician, Dr. Chomsky wrote in support of his application for short term disability benefits that Mr. Garrett made April 1, 2016, after he was placed out of service due to his disability and FMLA. (Garrett Dep. Ex. 29, **Ex. 2**). This letter was sent in an effort to obtain short term disability benefits because Mr. Garrett had been placed out of service without pay. Dr. Chomsky noted in the letter that although he was stable, he was in support of the application because CSX had placed him out of work due in part to the dangers of the job and his condition- which is what CSX had told Mr. Garrett. (*Id*.). This letter to Mr. Garrett's insurance carrier was not presented to CSX at the time it made its decision to place Mr. Garrett out of work, nor was it provided to them until after this

---

[1] The VA is not authorized to develop evidence for the purpose of challenging the claimant, but rather is required to "assist a claimant in developing the facts pertinent to [his or her] claim." 38 C.F.R. § 3.103. the VA's disability benefits system imposes a lower, almost *de minimis* burden of proof on claimants, resolving reasonable doubts in the claimants' favor where "there is an approximate balance of positive and negative evidence." 38 U.S.C. § 5107(b); *see also* 38 C.F.R. § 3.102.

4

Case 3:17-cv-00497 Document 44 Filed 08/17/18 Page 4 of 10 PageID #: 886

litigation was initiated. Lastly, Mr. Garrett's short-term disability carrier denied his application because he was able to work- based on Dr. Chomsky's statement that "Patient was never advised not to work-nor on light duty. We have never given him restrictions. However, his work has restricted him from working." (5/11/16 Aflac to Garrett, **Ex. 3**).

This letter should be excluded under Rules 401, 402, and 403. Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Rule 403 of the Federal Rules of Evidence permits a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. In the case, the determination what qualifies as a disability for purposes of insurance varies greatly from the standard under the ADAAA. *Hostettler v. College of Wooster*, 2018 U.S. App. LEXIS 19612 *16; 2018 FED App. 0140P (6th Cir. July 18, 2018) (In keeping with the remedial purposes of the ADAAA, '[t]he definition of disability' under the ADA 'shall be construed in favor of broad coverage.' 42 U.S.C. § 12102(4)(A). That is because the primary concern of the ADA is 'whether covered entities have complied with their obligations and whether discrimination has occurred,' not whether an individual's impairment is a disability. 29 C.F.R. § 1630.2(j)(1)(iii)). Accordingly, Plaintiff requests the Court prohibit introduction of Dr. Chomsky's letter related to Mr. Garrett's denial of short term disability insurance. Any such information will only serve to prejudice Mr. Garrett and confuse the jury.

**III.** **Letter from EEOC Regarding Mr. Garrett's Charge and CSX's Position**

During Mr. Garrett's deposition, he was questioned about a letter from the EEOC that primarily contained CSX's rebuttal to Mr. Garrett's charge of discrimination. (Garrett Dep. Ex. 28, attached as **Ex. 4**). The letter also referenced MET standards and railroad standards that were

5

never implemented, as if they were applicable. Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Moreover, Rule 403 of the Federal Rules of Evidence permits a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Plaintiff requests the Court prohibit introduction of the EEOC letter to Mr. Garrett about CSX's position statement because it is not relevant and due to the fact that it is on EEOC letterhead, the jury could mistake its importance.

### IV. Dr. Heligman's Testimony Should Not Be Offered as Expert Testimony

The testimony of CSX Chief Medical Officer, Dr. Craig Heligman, should be excluded as expert testimony because he was neither a treating physician, nor was he a designated expert in this case. Thus, any medical testimony regarding cardiovascular health, Mr. Garrett's cardiovascular health or railroad safety testimony that is utilized by Defendant in an expert capacity should be excluded or limited at trial.

#### a. *Defendant Offers Improper Expert Testimony*

Federal Rule of Civil Procedure 26(a)(2) requires that a party timely disclose a written report of a witness retained to provide expert testimony in a case. Defendant has not disclosed Dr. Heligman as an expert of any kind. Federal Rule of Evidence 702 sets the standard for testimony by Expert Witnesses by requiring certain thresholds be met, including verification of the expert's scientific and specialized knowledge, and that sufficient facts, data and reliable principles and methods were utilized and applied to the facts of the case. Fed. R. Civ. P. 702. Defendant seeks to bypass all these requirements for expert testimony by using the opinions of a non-qualified company doctor at trial.

6

It is well settled that treating physicians may provide 'expert' testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness. *Gass v. Marriott Hotel Services*, Inc., 588 F.3d. 419, 426 (6th Cir. 2009). Plaintiff's treating cardiologist, Dr. Chomsky, has been deposed in this matter, his testimony provides a basis for Plaintiff's illness and the cause of his ICD implant, and he is expected to testify at trial. In addition, the record supports that Dr. Chomsky cleared Plaintiff to work by completing a CSX form known as an MD3, by indicating that Plaintiff's prognosis was stable, that he could perform his assignment without threat to safety and could return to work without restrictions. Dr. Heligman's opinion based on his medical treatment of Plaintiff are disputed by Dr. Heligman, who is neither a treating physician nor a disclosed expert. Dr. Heligman is merely an executive of CSX, who never laid eyes on or examined Mr. Garrett, that happens to also be a licensed medical doctor.

The law is clear that when an individual, including a physician, expresses an opinion which is based on "scientific, technical or other specialized knowledge," that witness is offering expert testimony for which the court must perform the *Daubert* analysis. *See In re Aredia & Zometa Prods. Liab. Litig*., 2009 U.S. Dist. LEXIS 71600 (M.D. Tenn. 2009)(citing *Wilson v. Taser Int'l, Inc*., 303 Fed. Appx. 708 (11th Cir. 2008). *Daubert* requires that, before an expert's testimony is to be considered, the following must be established (1) whether the reasoning or methodology underlying the expert's testimony is scientifically valid; and (2) whether that reasoning or methodology could be applied properly to the facts at issue to aid the trier of fact. *Id*. *Daubert* seeks to gate keep testimony so that only those opinions that have a "reliable basis in the knowledge and experience of the discipline" are permitted. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). A medical doctor is typically competent to testify regarding matters within his or her professional experience. *Dickenson v. Cardiac & Thoracic*

7

*Surgery of Eastern Tenn.*, 388 F.3d 976, 982 (6th Cir. 2004). However, when a doctor strays from such professional knowledge, the testimony is less reliable and more likely to be excluded under Rule 702. *Id*.

### b. Dr. Heligman's Opinions Should Be Excluded.

Dr. Craig Heligman is the chief medical officer of CSXT, and is board certified in occupational medicine. Dr. Heligman is not a cardiologist, is not board certified in cardiology, and has never worked in a medical setting involving cardiology. He has also never treated or examined the Plaintiff for any condition, cardiovascular or otherwise. Dr. Helgiman has not been qualified as an expert trained in train/railroad safety and is not an expert on matters of train safety and regulations. He has never ridden a CSX train or observed CSX railway workers. As Chief Medical Officer, Dr. Heligman supervises the industrial hygiene group, the drug and alcohol testing group, the return-to-work fitness for duty program and the vocational rehabilitation program. Nevertheless, he has repeatedly opined on matters of cardiovascular health, medical literature and policy, and railroad safety generally, as if he were both an expert on such matters and familiar with such matters and the Plaintiff individually. Defendant utilizes his speculative testimony that sounds like a medical diagnosis or expert testimony to opine on the ultimate issue in this case, *i.e.*, whether Mr. Garrett was able to perform the essential functions of his job and whether he was prohibited as a matter of policy from performing his job duties as a CSX Engineer. *See* Fed.R.Evid. 702, 704.

Opinions premised on medical literature that has not been evaluated to *Daubert* standards to support Dr. Heligman's decision to remove Mr. Garrett from service based on railroad safety propositions or cardiovascular standards must be excluded. Any such statements are not within the "knowledge and experience" of Dr. Helgiman's discipline in occupational medicine. Medical literature previously cited by Dr. Heligman that relates to cardiovascular function is expert and

8

nature and must be excluded. Likewise, railroad literature that only barely touched on occupational standards that were never even adopted by a Federal regulatory body in law, rule, regulation or by CSX in policy or collective bargaining agreement must be excluded.

Dr. Heligman opines on matters that sound entirely in cardiovascular medical diagnoses that he is unqualified to provide. Any evidence regarding the appropriateness of ICD discharges and appropriate MET and LVEF levels for train safety is neither supported in the record with any vetted medical literature or specificity and is wholly outside of Dr. Heligman's discipline. This testimony can only be provided by a qualified expert; Dr. Heligman's opinions do not meet this standard. Accordingly, Plaintiff requests the Court GRANT the *Motion in Limine* and exclude the improper expert testimony of Dr. Heligman.

WHEREFORE Plaintiff requests the Court GRANT the Motions *in Limine* as set forth herein.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter Williams BPR # 022407
Paige Lyle BPR # 032959
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com

*Attorneys for Plaintiff*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 17th day of August 2018, a copy of the foregoing has been furnished via the Court's electronic filing system, or other appropriate means, to Chris Cardwell, Gullett, Sanford, Robinson and Martin, PLLC, 150 Third Avenue South, Suite 1700, Nashville, Tennessee 37201.

s/ *Heather Moore Collins*